NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-624

THE STATE EX REL. WARE *v.* THE CITY OF AKRON ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ware v. Akron*, Slip Opinion No. 2021-Ohio-624.]**

*Mandamus—Public Records Act—A public office is required to make copies of public records available to any person upon request within a reasonable period of time—A person requesting public records shall be entitled to recover an award of statutory damages if a court determines that the public office or the person responsible for the public records failed to comply with an obligation in accordance with R.C. 149.43(B)—Writ granted.*

(No. 2019-1406—Submitted January 12, 2021—Decided March 9, 2021.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this original action, relator, Kimani Ware, seeks a writ of mandamus to compel the production of public records that he had requested from respondents, the city of Akron and its police chief Kenneth R. Ball II (collectively,

"the city"). For the reasons set forth below, we grant a writ of mandamus compelling the city to inform Ware of the cost for copying the public records he seeks, with a breakdown showing how the costs were calculated. In addition, we award Ware $1,000 in statutory damages. Finally, we deny Ware's motion asking this court to take judicial notice of certain facts.

## I. Background

{¶ 2} Ware is an inmate at the Trumbull Correctional Institution. On February 4, 2019, he sent two letters to the Akron Police Department requesting various public records. In one letter, Ware asked for copies of (1) the department's policy regarding search warrants, (2) the department's disciplinary policy, (3) the department's body-camera policy, (4) the department's arrest policy, and (5) a roster of department employees. The other letter sought the personnel files of Franklin Harrah, Daniel Metzger, Anna Romito, and William Bosak.

{¶ 3} Ware sent his letters by certified mail, and a department employee signed the receipt acknowledgement on February 14. Ware did not receive a response to his public-records requests.

{¶ 4} On October 16, 2019, Ware filed a complaint for a writ of mandamus in this court. On November 8, 2019, the city filed a motion to dismiss Ware's complaint. On January 22, 2020, this court denied the city's motion to dismiss and issued an alternative writ, ordering the parties to submit evidence and file briefs in accordance with S.Ct.Prac.R. 12.05. 2020-Ohio-94, 137 N.E.3d 1221.

{¶ 5} According to the evidence submitted by the city, the police department and the city's law office first became aware of Ware's public-records requests on October 20, 2019 (that is, after receiving the complaint). The city attributes this oversight to two possible causes: (1) the administrative assistant who signed the receipt for Ware's request was undergoing treatment for mesothelioma at the time, from which she eventually passed away and (2) according to an affidavit signed by the city-law department's executive assistant Elaine M. Stoeberman, in

2

February 2019, Akron experienced a "City-wide cyber-event" that left e-mail communication between city departments practically unusable.

{¶ 6} On October 24, the city responded to Ware with two letters. With respect to the personnel files that Ware requested, the city informed him that Bosak's personnel file had been copied for him in response to a previous public-records request but that because he had never paid the fee for that record, the file would not be mailed to him until he paid the invoice. Likewise, the city indicated that the personnel files of Harrah, Metzger, and Romito were copied and ready to be mailed to him, subject to redactions, once Ware paid the amount requested in the invoice that had been enclosed with the city's response. A copy of that invoice is not in the record.

{¶ 7} In a separate letter, which was also dated October 24, the city responded to Ware's public-records request for the police department's various policies. The city informed Ware that the police department did not have a written "arrest policy." As for his remaining requests—copies of the police department's policies on search warrants, discipline, and body cameras, and a copy of the police department's roster of certain employees—the city informed Ware that those records would be sent to him once he paid the amount requested in the invoice that had been enclosed with the letter. A copy of that invoice is also not part of the record.

{¶ 8} The city indicates in an affidavit that the total cost for copying all the records is $21.05. Ware has not submitted any payment to the city.

## II. Legal analysis

### A. *The request for judicial notice*

{¶ 9} On July 31, 2020, we ordered the city to serve Ware its merit brief by August 5. In that same entry, we ordered Ware to file his reply brief by August 20, 2020. Ware attempted to file a reply brief, but because it was received by this court on August 24, it was rejected as untimely.

**{¶ 10}** On September 3, Ware filed a motion asking this court to take judicial notice of those facts. It is unclear, however, in what manner granting such notice would assist his case. He does not ask this court for any relief in his motion, and the facts that he relates are not relevant to the substantive issues before us. We therefore deny the motion.

### B. The merits of the suit

**{¶ 11}** The Ohio Public Records Act, R.C. 149.43, requires a public office to make copies of public records available to any person upon request within a reasonable period of time. R.C. 149.43(B)(1). A "public record" is a record "kept by any public office." R.C. 149.43(A)(1). Mandamus is an appropriate remedy by which to compel compliance with the Public Records Act. R.C. 149.43(C)(1)(b); *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6.

**{¶ 12}** To be entitled to the writ, Ware must demonstrate that he has a clear legal right to the requested relief and that the city has a clear legal duty to provide that relief. *See State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 10. Ware must prove his right to relief by clear and convincing evidence. *See id*. However, the Public Records Act "is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records." *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996).

**{¶ 13}** In his first proposition of law, Ware contends that he is entitled to a writ of mandamus compelling the city to produce copies of the public records he requested. But the Public Records Act does not require a public-records custodian to provide copies of public records free of charge. *State ex rel. Call v. Fragale*, 104 Ohio St.3d 276, 2004-Ohio-6589, 819 N.E.2d 294, ¶ 6. Instead, R.C. 149.43(B)(1) "requires only that copies of public records be made available at cost." *Call* at ¶ 6. Indeed, R.C. 149.43(B)(1) "authorizes a public office to require the prepayment of

costs before providing copies of public records." *State ex rel. Dehler v. Spatny*, 127 Ohio St.3d 312, 2010-Ohio-5711, 939 N.E.2d 831, ¶ 4. So, if the city informed Ware how much copies of the records would cost *and* offered to send copies of those records to him once he paid those costs, then the city would have satisfied its obligations under the statute.

{¶ 14} However, the evidence does not establish that this occurred. Ware admits that he received the two October 24 letters in which the city agreed to provide copies of most of the records he had requested upon payment of the costs of copying those records, but Ware asserts that the city never enclosed the invoices with those letters. Ware's allegation that the city neglected to send the invoices is bolstered by the fact that the city did not submit those invoices as evidence in this case. So, although the city offered to provide Ware the public records once he paid for the cost of the copies, the first time it identified the amount to be paid was in an affidavit to this court, and that affidavit provided only an aggregate cost, not a breakdown of the charges.

{¶ 15} Because the city is willing to provide copies of the records once Ware has paid for the copies, a writ of mandamus compelling the city to provide the records is neither warranted nor necessary. However, we do grant a writ ordering the city to provide the invoices to Ware, so he may decide whether he wishes to pay for the copies. *See State ex rel. Mayrides v. Whitehall*, 62 Ohio App.3d 225, 228-229, 575 N.E.2d 224 (10th Dist.1990) (granting a writ of mandamus ordering the public-records custodians to notify the requester of the cost of the public records that had been requested).

### C. Statutory damages

{¶ 16} In his second proposition of law, Ware contends that he is entitled to an award of $2,000 in statutory damages. A person requesting public records "shall" be entitled to recover an award of statutory damages "if a court determines that the public office or the person responsible for the public records failed to

comply with an obligation in accordance with [R.C. 149.43(B)]." R.C. 149.43(C)(2). Ware alleges that the city breached its duty under the statute by failing to respond to his public-records requests for nearly nine months.

{¶ 17} As a preliminary matter, Ware has satisfied the threshold requirement of a qualifying delivery method. To qualify for statutory damages, a requester must transmit the public-records request by "hand delivery, electronic submission, or certified mail." R.C. 149.43(C)(2). The evidence is undisputed that Ware served the public-records requests by certified mail.

{¶ 18} Statutory damages will be awarded when a public-records custodian takes an unreasonable length of time to produce the requested records. *State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 13, 2018-Ohio-5108, 123 N.E.3d 887, ¶ 13. The city does not suggest that nine months was a reasonable amount of time for it to respond. Instead, the city asks this court to focus on the fact that once it became aware of Ware's public-records requests in October 2019, it responded within six days. Implicit within the city's argument is a request for this court to excuse its failure to respond timely to Ware's public-records requests due to the illness of its employee and the cyber disruption that restrained the city's ability to communicate via e-mail. However, statutory-damage awards under the Public Records Act are not contingent on the good or bad faith of the public-records custodian. Rather, under R.C. 149.43(C)(2), statutory damages are mandatory whenever a public-records custodian fails to comply with her obligation.

{¶ 19} Alternatively, the city argues that damages are inappropriate because Ware has not suffered an injury from his lost use of the records. The purpose of awarding statutory damages, however, is to compensate "for injury arising from the lost use of the requested information." R.C. 149.43(C)(2). The existence of this injury is "conclusively presumed." *Id*. The city argues that while "R.C. 149.43(C)(2) states that the injury is conclusively presumed, * * * there has to be an actual injury connected to the loss of those records in order for the injury to be

conclusively presumed." But requiring a requester to make even a minimal showing of actual injury would be contrary to the statutory command that injury is *conclusively* presumed. *See, e.g.*, *Black v. Mecca Twp. Bd. of Trustees*, 91 Ohio App.3d 351, 355, 632 N.E.2d 923 (11th Dist.1993) (holding that a person asserting an action under the Ohio Sunshine Law is not required to show injury because R.C. 122.22(I)(3) states that "irreparable harm and prejudice" are "conclusively and irrebuttably presumed").

{¶ 20} The city also suggests that any injury is the result of Ware's own failure to pay the invoices. But that claim overlooks both the city's failure to respond for nearly nine months and the city's apparent failure to include the invoices with its responsive letters.

{¶ 21} We hold that Ware is entitled to an award of damages, but not in the amount he seeks. The amount of statutory damages is fixed at $100 per business day during which the public office failed to comply with its statutory obligation, up to a maximum of $1,000. R.C. 149.43(C)(2). A court may reduce the amount of the damages if it finds both (1) that based on existing law, a "well-informed" public-records custodian would reasonably believe that her conduct did not fail to comply with the Public Records Act, R.C. 149.43(C)(2)(a), and (2) a "well-informed" public-records custodian would reasonably believe that her conduct would serve the public policy underlying the authority that has been asserted for the response to the requester, R.C. 149.43(C)(2)(b). Neither reduction factor applies here. We therefore conclude that Ware is entitled to the maximum of $1,000.

{¶ 22} Ware asks the court to award $2,000 on the theory that he served two separate requests and is entitled to the maximum for each. But the fact that he spread his public-records requests across two letters does not automatically mean that each letter constitutes a separate request for purposes of calculating statutory damages. R.C. 149.43(C)(1) "does not permit stacking of statutory damages based

on what is essentially the same records request." *State ex rel. Dehler v. Kelly*, 127 Ohio St.3d 309, 2010-Ohio-5724, 939 N.E.2d 828, ¶ 4. Ware presents no legal argument to suggest that the letters constitute separate public-records requests. And the evidence in the record suggests that the two letters were sent to the city in a single envelope. In the first paragraph of his affidavit, Ware identifies his exhibit A as the letter requesting the police department's policies and exhibit B as the letter requesting the police department's personnel files. Both exhibits show certified-mail receipts attached to the letters. But the two receipts are identical, down to the 22-digit tracking code on each: 9590 9402 4371 8190 6966 77.

**{¶ 23}** For these reasons, we decline to award $2,000 in statutory damages.

### III. Conclusion

**{¶ 24}** Based on the foregoing, we deny the motion for judicial notice, we grant a writ of mandamus compelling the city to inform Ware of the cost for copying the records he seeks and to provide a breakdown of the charges, and we award Ware $1,000 in statutory damages.

Writ granted.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Kimani Ware, pro se.

Eve V. Belfance, Akron Director of Law, and John Christopher Reece, Assistant Director of Law, for respondents.

_____