**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Macksyn v. Spencer*, Slip Opinion No. 2025-Ohio-2116.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-2116

THE STATE EX REL. MACKSYN *v.* SPENCER ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Macksyn v. Spencer*, Slip Opinion No. 2025-Ohio-2116.]**

*Mandamus—Public-records requests—Respondents ordered to, within 21 days, either (1) produce the emails Macksyn requested in his March 12, April 4, and April 21, 2024 public-records requests and certify date the emails were produced for each request or (2) certify for each request that no responsive emails exist—Relator's request that respondents be ordered to produce other records denied—Limited writ granted and relator's request for statutory damages deferred pending respondents' compliance with limited writ.*

(No. 2024-0875—Submitted February 11, 2025—Decided June 18, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by FISCHER, DEWINE, DETERS,

HAWKINS, and SHANAHAN, JJ.  KENNEDY, C.J., concurred in part and dissented in part, with an opinion joined by BRUNNER, J.

**Per Curiam.**

{¶ 1} Relator, Delanor L. Macksyn, has filed an original action against respondents, Department of Rehabilitation and Correction ("DRC") employees Kenneth Spencer, LeAnn Walker-Williams, and Kelly Rose.  He seeks a writ of mandamus ordering respondents to produce records in response to multiple public-records requests he sent them as well as an award of statutory damages.  Macksyn has also filed several motions.

{¶ 2} We deny Macksyn's motions and deny the requested writ but grant a limited writ ordering respondents to, within 21 days, either (1) produce the emails Macksyn requested in his March 12, April 4, and April 21, 2024 public-records requests and certify to this court the date the emails were produced for each request or (2) certify to us for each request that no responsive emails exist.  We defer our ruling on Macksyn's request for statutory damages until respondents have complied with the limited writ.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 3} Macksyn is currently incarcerated at the Richland Correctional Institution.  Spencer is an operations-compliance manager for the institution and assumed responsibility on April 1, 2024, for answering public-records requests for the institution.  Until August 2024, Walker-Williams was an investigator at the institution and was responsible for investigating alleged violations of prison rules.  Rose is an inspector for the institution, and her duties include investigating grievances and responding to inmates' kites.[1]

---

1. "A kite is a type of written correspondence between an inmate and prison staff."  *State ex rel. Griffin v. Szoke*, 2023-Ohio-3096, ¶ 3.

**{¶ 4}** On March 12, 2024, Macksyn sent Walker-Williams a kite asking to review an email sent by one DRC employee to another regarding an inmate policy. Later that day, Macksyn sent Walker-Williams a second kite in which he requested the same email as well as approximately 20 minutes of law-library-camera footage from earlier that day and footage from a correction officer's body-worn camera for a ten-minute period earlier that day. On March 14, Walker-Williams responded to the first kite, writing that Macksyn's public-records request would "need to be submitted to the Warden's Administrative Assistant." Also on March 14, Walker-Williams responded to the second kite, writing that the request had already been addressed.

**{¶ 5}** The next day, Macksyn sent Rose an electronic kite requesting copies of two kites he had previously sent. Rose wrote back that day but appears to have been responding to an unrelated issue regarding library access rather than the records request. There is no indication in the record, however, that Macksyn alerted Rose about the unanswered records request.

**{¶ 6}** On April 3, Macksyn sent Spencer an electronic kite requesting three categories of records: (1) eight kites Macksyn had previously sent, (2) all electronic communications concerning Macksyn that were sent to or from six identified members of the prison's staff "and/or any other staff" between March 7 and April 4, and (3) approximately 45 minutes of video footage recorded at certain times on March 12 and 13 by cameras above the library's check-out desk. Later on April 3, Spencer sent a response in which he told Macksyn (1) to contact Rose regarding his request for kites, (2) denied the request for electronic communications concerning Macksyn, explaining that the "[r]equest is far too vague" and suggesting that he "provide an exact record [he was] looking for," and (3) denied the request for video footage as exempt from disclosure under R.C. 149.43(A)(1)(h) (exempting confidential law-enforcement investigatory records).

**{¶ 7}** On April 4, Macksyn sent Spencer a second kite requesting some of the same records as those he requested on April 3, although he also requested additional kites. He also narrowed his prior request for electronic communications concerning himself to those exchanged between Rose and three identified members of the prison's staff. The next day, Spencer replied that the request had been received and would be reviewed.

**{¶ 8}** On April 21, Macksyn sent Spencer an electronic kite requesting copies of four kites and four grievances. In addition, Macksyn requested emails concerning himself sent between Rose and the warden's office from March 12 through 23. Spencer replied the next day, writing, "I will work on the requested kites and grievances. I will call you down this week to review the footage. I am in the process of the emails."

**{¶ 9}** Spencer avers that he has provided all the requested kites and grievances, but Macksyn identifies kites and grievances that he claims have not been produced. The parties agree that Spencer allowed Macksyn to view the library-camera footage on May 7. Macksyn asserts, however, that he asked for copies of the footage—not to view it—and that the request therefore remains outstanding.

**{¶ 10}** On June 13, Macksyn filed this mandamus action. He seeks a writ ordering respondents to produce the remaining records and seeks an award of statutory damages. We issued an alternative writ, setting a schedule for the submission of briefs and evidence. 2024-Ohio-3227. Respondents filed evidence, but Macksyn did not.

## II. LEGAL ANALYSIS

### A. *Motions*

**{¶ 11}** We first address six motions that Macksyn has filed. For the reasons explained below, we deny all six.

### 1. *Macksyn's motion to strike respondents' merit brief*

{¶ 12} Macksyn did not file a reply brief. He did, however, file a motion to strike respondents' merit brief. He claims that respondents did not serve him with a copy of the brief and that this alleged failure prevented him from timely filing a reply. Respondents have filed a memorandum in opposition to Macksyn's motion.

{¶ 13} S.Ct.Prac.R. 3.11(B) generally requires that a party serve filings on the other parties. Service by mail is proper and "is effected by depositing the copy with the United States Postal Service for mailing." S.Ct.Prac.R. 3.11(C)(1). If a party fails to serve another party, the party adversely affected may file a motion to strike the document that was not served, and if we determine that service was not made, we may strike the document. S.Ct.Prac.R. 3.11(E). Here, respondents' merit brief contains a certificate of service signed by their counsel stating that respondents' counsel had served a copy of the brief on Macksyn by regular mail. In their memo in opposition to Macksyn's motion, respondents state that their counsel mailed their merit brief to Macksyn the day it was filed. Attached to the memo is an internal mailing-request form indicating that Macksyn was mailed a copy of the brief the day it was filed. We conclude that respondents served Macksyn by regular mail, and we deny his motion to strike.

### 2. *Macksyn's motion to strike respondents' memo in opposition to Macksyn's motion to strike respondents' merit brief*

{¶ 14} Macksyn has filed a motion to strike respondents' memorandum in opposition to Macksyn's motion to strike respondents' merit brief. Macksyn does not allege that respondents failed to serve the memo on him. Rather, the motion to strike responds to arguments made in respondents' memo and is, in substance, a reply to the memo. Macksyn also asks that we impose sanctions on respondents for making these arguments. Replies to responses to motions are not permitted. S.Ct.Prac.R. 4.01(B)(2). Therefore, we deny the motion to strike respondents'

memo in opposition to relator's motion to strike respondents' merit brief and we deny the accompanying sanctions request.

### 3. *Macksyn's motions for judicial notice*

{¶ 15} Macksyn has also filed a motion asking us to take judicial notice under Evid.R. 201(D) of exhibits he would like to submit as evidence. Macksyn attempted to file evidence in this case, but the clerk did not receive the evidence until seven days after it was due and therefore rejected it as untimely. In an affidavit attached to his motion for judicial notice, Macksyn avers that he placed his evidence in the prison mailbox seven days before it was due and that the prison mailed the evidence four days before it was due. He has also attached prison postage receipts, envelopes, and letters from the clerk's office that appear to provide support for his averments about his filing attempt. However, he failed to attach copies of most of the proposed exhibits that are the basis for his motion.

{¶ 16} Evid.R. 201 allows a court to take judicial notice of an adjudicative fact that is not subject to reasonable dispute. Macksyn wants us to take judicial notice of proposed exhibits, but he did not attach most them to his motion, so we cannot determine whether they are subject to reasonable dispute. And although Macksyn did attach postage receipts, envelopes, and letters from the clerk's office, these are not adjudicative facts of the case. Therefore, we deny Macksyn's motion for judicial notice.

{¶ 17} Later, several months after the close of briefing, Macksyn filed a motion for leave to file a revised motion for judicial notice. This time, he attached 16 proposed exhibits he would like us to take judicial notice of. The exhibits, however, consist of evidence related to the disputed issues in this case. Even assuming that this motion was timely filed, the alleged facts Macksyn wishes us to take judicial notice of are subject to reasonable dispute. We therefore deny this motion for leave.

#### 4. *Macksyn's "motion for rebuttal presumption of service"*

{¶ 18} Macksyn also filed what he calls a "motion for rebuttal presumption of service." In this motion, as in his initial motion, he asks us to strike respondents' merit brief. In the alternative, he asks that respondents be ordered to serve him with a copy of their brief and that we allow him time to file a reply. For the same reasons we deny his initial motion, we also deny this motion.

#### 5. *Macksyn's "motion to clarify the record"*

{¶ 19} Finally, Macksyn filed a "motion to clarify the record." Macksyn does not request any additional relief in the motion. Rather, he appears to present additional arguments in support of his motions to take judicial notice and motion to rebut the presumption of service. Because the motion does not request relief, we deny it. *See* Civ.R. 7(B)(1) ("A motion . . . shall set forth the relief or order sought.")

### B. *Writ of mandamus*

{¶ 20} "[U]pon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). A writ of mandamus is an appropriate remedy to compel compliance with the Public Records Act, R.C. 149.43. *See* R.C. 149.43(C)(1)(b). To obtain the writ, "the requester must prove by clear and convincing evidence a clear legal right to the record and a corresponding clear legal duty on the part of the respondent to provide it." *State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-1419, ¶ 10.

{¶ 21} Although Macksyn sent at least five electronic kites requesting public records, many of the records requested in those kites are the same as or similar to the records he requested in previous kites. For ease of analysis, we review Macksyn's claim for a writ of mandamus by the type of records requested rather than the date of the request.

### 1. Requests for kites and grievances

{¶ 22} On April 3 and April 4, 2024, Macksyn sent Spencer kites requesting copies of various kites he had previously sent. Spencer avers that on April 8 he provided to Macksyn all the kites Macksyn requested on these dates. Macksyn avers that Spencer "released all requested kites" on April 17. Although the parties disagree as to the exact date when Spencer produced the kites, they appear to agree that the kites were produced, so we deny Macksyn's mandamus claim as to these requests.

{¶ 23} The parties disagree, however, regarding whether respondents produced other kites and grievances Macksyn had requested. On March 15, Macksyn sent Rose a kite requesting a copy of two kites he had previously sent. Spencer avers that on April 8 he provided these kites to Macksyn. Although Macksyn avers that on April 17 Spencer "released all requested kites," parts of Macksyn's complaint and brief appear to allege that this production did not include kites responsive to his March 15 public-records request.

{¶ 24} In addition, on April 21, Macksyn requested four kites and four grievances. Macksyn states that Spencer produced three of the kites and all four grievances on April 25. He avers, however, that Spencer did not provide one of the kites and that two of the grievances were missing attachments. There is no indication in the record that Macksyn notified Spencer about the missing documents. Spencer avers that he has provided all requested documents to Macksyn. Moreover, he also avers that if "Macksyn would have indicated that he was missing a document, [he] would have promptly provided the requested document."

{¶ 25} Having considered the above conflicting evidence, we conclude that Macksyn has not shown by clear and convincing evidence that Spencer failed to produce all the kites and grievances Macksyn requested on March 15 and April 21.

Therefore, we decline to order respondents to produce any of those kites or grievances.

### 2. *Requests for library-camera footage*

{¶ 26} Macksyn requested approximately 20 minutes of library-camera footage on March 12, 2024, and approximately 45 minutes of library-camera footage on April 3.

{¶ 27} Spencer avers that he met with Macksyn and allowed him to view the footage on May 7. Macksyn agrees that Spencer showed him the footage. Although he alleges in his brief that Spencer improperly made the footage difficult to watch by running the video at three times the normal speed, he does not provide any evidence supporting this allegation.

{¶ 28} Macksyn also argues that he requested copies of the video footage—not to inspect it. Spencer avers, and respondents argue, that DRC policy prohibits inmates from having digital media such as DVDs or discs. *See* Adm.Code 5120-9-19(B)(3) ("An inmate may not receive or possess videotapes, compact discs, computer discs, or material in any other form or medium not otherwise authorized by this rule without prior approval from the managing officer or designee."). We have previously held that DRC may properly respond to an inmate's request for a copy of video footage by allowing the inmate to inspect the footage. *State ex rel. Slager v. Trelka*, 2024-Ohio-5125, ¶ 30. We conclude that Spencer properly allowed Macksyn to inspect the footage, rather than provide copies, and we therefore decline to order respondents to produce copies of any of the requested library-camera footage.

### 3. *Request for body-worn camera footage*

{¶ 29} On March 12, 2024, Macksyn requested approximately ten minutes of footage recorded earlier that day by a correction officer's body-worn camera. Spencer avers that footage recorded by correction officers' body-worn cameras is retained only if a qualifying event occurs, such as assaults or medical emergencies.

Here, Spencer avers that there was no qualifying event and that the body-worn camera footage that Macksyn requests therefore was not retained. A public office "has no obligation to produce public records that do not exist." *State ex rel. Scott v. Toledo Corr. Inst.*, 2024-Ohio-2694, ¶ 12. Absent contrary evidence, an averment from the person responsible for public records that the requested records do not exist is sufficient to defeat a claim for a writ of mandamus to compel access to the records. *See id.*; *State ex rel. McDougald v. Greene*, 2020-Ohio-2782, ¶ 8-9. We conclude that Macksyn has not shown that the requested body-worn camera footage exists, and we therefore deny Macksyn's mandamus claim as to this footage.

### 4. *Requests for emails between prison-staff members*

{¶ 30} As described in detail below, Macksyn also made several requests for emails and electronic communications sent between members of the prison's staff. Although Macksyn originally requested emails and other electronic communications, he now seeks production of emails only.

{¶ 31} On March 12, 2024, Macksyn requested an email sent by Stacy Wick to "Librarian Johnston\ast librarian Erwin" that Macksyn says discusses a policy requiring a written contract in order for one inmate to provide legal assistance to another. He states that he saw Erwin hand a copy of the email to "Principal Smith" earlier that day. Respondents did not address this request in any response they sent to Macksyn. Then on April 3, Macksyn requested all electronic communications concerning Macksyn that were sent between any prison-staff members from March 7 through April 4. Later on April 3, Spencer denied the request, explaining that the "[r]equest is far too vague" and suggesting that Macksyn "provide an exact record [he was] looking for." The next day, Macksyn wrote back, "I want any electronic communications between Smith and Rose from 3-8 to 4-1 concerning me, Rose and Johnston from 3-8 to 4-3 about me. Rose and Allen about me." Spencer responded on April 5 that the request had been "received and w[ould] be reviewed." On April

10

21, Macksyn requested "e-mails between Rose and Warden's office between dates of 3-12 to 3-23 concerning Macksyn." On April 22, Spencer wrote back, "I am in the process of the emails."

{¶ 32} Macksyn avers that on April 17 and 25, Spencer verbally denied Macksyn's requests for emails sent between members of the prison's staff. In contrast, Spencer avers that he has provided all responsive "records" and "documents"; as a matter of logic, by averring that he has provided all "records" responsive to Macksyn's requests for emails Spencer avers that he has provided the requested emails, as emails are types of records.

{¶ 33} Although the parties' affidavits again conflict, they are not evenly balanced. For several reasons, based on our review of the affidavits and other evidence, we strongly doubt that Spencer actually provided the emails to Macksyn. First, Spencer's affidavit describes Macksyn's requests as seeking kites, grievances, informal complaints, library-video footage, and body-worn camera footage—but does not mention emails or other electronic communications. In fact, the affidavit does not even contain the words "email" or "electronic communication."

{¶ 34} Second, respondents submitted as evidence several emails sent between DRC employees showing that the employees were working on responding to Macksyn's public-records requests. The emails discuss Macksyn's requests for kites and grievances, and they appear to contain attachments to his kites and grievances. But they do not address Macksyn's requests for emails, nor do they contain the requested emails as attachments. For example, on April 22, Spencer emailed Rose to ask for assistance with responding to Macksyn's April 21 request. Spencer's email quotes the portions of Macksyn's request asking for kites and grievances but not the portion asking for emails.

{¶ 35} Finally, although a party's brief is not evidence, we note that respondents' brief—other than in a short summary of Macksyn's prayer for relief—

does not mention Macksyn's requests for emails. Viewing the evidence in total, we conclude that Macksyn has shown that respondents failed to produce any records responsive to his requests for emails sent between members of the prison's staff.

**{¶ 36}** Having concluded that respondents have not produced any records responsive to Macksyn's requests for emails sent between members of the prison's staff, we must decide whether to grant a writ of mandamus ordering production of such emails. Respondents do not argue that Macksyn's requests for the emails were overbroad or ambiguous. Nor do they argue that the requested emails are statutorily exempt from production or are not public records. We previously held that a public-records request for emails exchanged between two city employees over a 27-day period and to and from a third employee over the same period was not overbroad. *State ex. rel. Cleveland Assn. of Rescue Emps. v. Cleveland*, 2023-Ohio-3112, ¶ 27. Here, Macksyn's March 12 requests asked for a single email. His April 4 request asked for emails concerning himself sent between Rose and three other employees over an approximately one-month period. And his April 21 request asked for emails concerning himself sent between Rose and the warden's office over a 12-day period that overlaps with the period specified in his April 4 request. In accord with *Cleveland Assn. of Rescue Emps.* and given that respondents do not argue that Macksyn's requests are overbroad, are ambiguous, or do not ask for public records, we conclude that any existing emails responsive to the requests must be produced.

**{¶ 37}** However, it is not apparent from the record whether any emails responsive to Macksyn's requests for emails sent between members of the prison's staff exist. Therefore, we issue a limited writ of mandamus ordering respondents to, within 21 days, either (1) provide Macksyn with copies of the emails he requested in his March 12, April 4, and April 21 kites and certify the date the emails responsive to each request were produced or (2) certify to this court for each request that no responsive emails exist. *See State ex rel. Brown v. Columbiana Cty. Jail*,

2024-Ohio-4969, ¶ 23-24 (granting limited writ ordering sheriff's office to either produce records or certify that no responsive records exist within 21 days); *Barr*, 2023-Ohio-3645, at ¶ 15.

### C. Statutory damages

{¶ 38} Macksyn also requests an award of statutory damages. Statutory damages must be awarded if a requester transmits a written public-records request by hand delivery, electronic submission, or certified mail and the public office or person responsible for public records fails to comply with an obligation under R.C. 149.43(B). R.C. 149.43(C)(2).[2] Macksyn submitted his public-records requests at issue here through the prison's electronic kite system, which constitutes electronic submission for purposes of R.C. 149.43(C)(2). *See State ex rel. Adkins v. Dept. of Rehab. & Corr. Legal Dept.*, 2024-Ohio-5154, ¶ 19.

{¶ 39} Because there are still factual questions concerning whether any responsive emails exist, we defer our ruling on Macksyn's request for statutory damages until respondents have complied with the limited writ. *See Brown*, 2024-Ohio-4969, at ¶ 23 (deferring determination whether to award statutory damages—and, if so, the amount—until the respondent complied with limited writ); *Barr*, 2023-Ohio-3645, at ¶ 18.

### III. CONCLUSION

{¶ 40} For the foregoing reasons, we grant a limited writ of mandamus ordering respondents to, within 21 days, either (1) provide Macksyn with copies of the emails he asked for in his March 12, April 4, and April 21, 2024 public-records requests and certify the date the emails responsive to each request were produced, or (2) certify to us for each request that no responsive emails exist. We decline to order respondents to produce any other records that Macksyn requested, and we

---

2. The General Assembly amended R.C. 149.43 in 2024 Sub.H.B. No. 265 with an effective date of April 9, 2025. This opinion applies the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

defer our ruling on his request for statutory damages until respondents have complied with the limited writ. We also deny Macksyn's motion to strike respondents' merit brief, motion to strike respondents' memorandum in opposition to that motion, two motions for judicial notice, "motion for rebuttal presumption of service," and "motion to clarify the record."

Limited writ granted.

_____

**KENNEDY, C.J., joined by BRUNNER, J., concurring in part and dissenting in part.**

{¶ 41} I concur in the majority opinion, with one exception: I would issue a limited writ of mandamus to compel respondents, Kenneth Spencer, LeAnn Walker-Williams, and Kelly Rose, to produce a copy of the informal complaint numbered RICI000000002625 that was requested by relator, Delanor L. Macksyn, on March 15, 2024. Macksyn has produced clear and convincing evidence indicating that respondents failed to produce that document, and Spencer's affidavit does not reliably rebut that evidence. Therefore, I concur in part and dissent in part.

{¶ 42} On March 15, 2024, Macksyn sent Rose a kite requesting copies of two informal complaints. Those two documents were numbered RICI000000002625 ("the 2625 complaint") and RICI000000002588 ("the 2588 complaint"). Macksyn also asked whether he needed to resubmit informal complaint No. RICI000000002580 ("the 2580 complaint"), a copy of which Macksyn later requested in a separate kite.

{¶ 43} Rose's response to Macksyn's public-records request did not address the request or indicate whether Rose would provide the documents. Instead, Rose responded, "Mr. Macksyn, [p]lease disregard the last notice submitted to you surrounding the library requirements and use the library at your will to this point. Thank you." (That is not a valid response under the Public Records Act, R.C. 149.43. *See State ex rel. Clark v. Dept. of Rehab. & Corr.*, 2025-Ohio-1577, ¶ 56-

14

60 (Kennedy, C.J., concurring in part and dissenting in part).) So from the outset, we know that Rose did not produce the two informal complaints at the time Macksyn requested them.

{¶ 44} On April 1, Spencer assumed the responsibility of answering public-records requests at the Richland Correctional Institution, where Macksyn is confined. Macksyn messaged Spencer on April 3 to inquire about the status of several public-records requests he had submitted, including his March 15 request for copies of the two informal complaints. According to Spencer, he contacted Rose and William Carr, an "operations administrative professional" at the prison, and they emailed Spencer "all the kites, grievances, and other documents responsive to IP [Incarcerated Person] Macksyn['s] requests as listed in Kite Request Numbers 429542681, 430237761, 435823131, 436[]126301, and 441239851." Kite No. 430237761 is the March 15 public-records request for the two informal complaints.

{¶ 45} In his affidavit, Spencer avers, "On or about April 8, 2024, I met with IP Macksyn and provided all the documents he requested." Macksyn, however, maintains in both his petition and his merit brief that he did not receive some of the requested documents.

{¶ 46} I recognize that the record of this case contains conflicting evidence regarding whether Spencer gave Macksyn the 2625 complaint—Spencer avers he did, and Macksyn maintains that Spencer did not. However, the chain of emails sent among Spencer, Rose, and Carr breaks that deadlock in Macksyn's favor. Those emails indicate that Rose attached the 2588 complaint and the 2580 complaint to an email he sent to Spencer on April 22. But the same is not true for the 2625 complaint; *none of the emails mention that informal complaint.* The record therefore contains no evidence indicating that Rose sent the 2625 complaint to Spencer, and there is no reason to believe that Spencer sent it to Macksyn.

**{¶ 47}** So even though Spencer makes the general statement that he has provided Macksyn with all the requested records, the absence in the email chain of any mention of the 2625 complaint combined with Macksyn's persistence in maintaining that he never received it—as well as his candor in admitting when he has received other records—clearly and convincingly prove that Macksyn never received a copy of that informal complaint.

**{¶ 48}** Respondents do not dispute that Macksyn's March 15 kite requesting the 2625 complaint constitutes a public-records request, nor do they argue that there is a statutory basis for denying him access to that document. Therefore, Macksyn has shown that respondents failed to produce a record responsive to the March 15 request, and he is entitled to a limited writ of mandamus compelling its production. Because more than ten days have passed since this action was filed, Macksyn is also entitled to statutory damages in the maximum amount of $1,000 for respondents' failure to produce any record responsive to this request. *See* R.C. 149.43(C)(2).[3]

**{¶ 49}** I agree with the majority's decision to defer determining the total amount of statutory damages until after respondents have produced all records responsive to the public-records requests Macksyn made in March and April 2024 that he has not yet received. But I would also issue a limited writ of mandamus compelling respondents to produce informal complaint No. RICI000000002625. I therefore dissent in part from the court's judgment.

———————————

Delanor L. Macksyn, pro se.

Dave Yost, Attorney General, and Jennifer A. Driscoll, Assistant Attorney General, for respondents.

———————————

3. The General Assembly amended R.C. 149.43 in 2024 Sub.H.B. No. 265 with an effective date of April 9, 2025. This opinion applies the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

January Term, 2025

_____